### MATHEW GAINES v. THE STATE.

Under the Civil Rights Bill a citizen of African descent defendant has the right to remove his case for final trial to the Federal courts, upon show-ing that there exists in the county where he is indicted, and in the State, such a prejudice against his race, and especially and particularly against himself, that he cannot have justice done him.

APPEAL from Fayette. Tried below before the Hon. I. B. McFarland.

The defendant, Gaines, was indicted, tried, and upon sufficient evidence convicted of bigamy, and his punish-ment fixed at one year in the penitentiary.

Defendant, at May term, 1872, urged his motion for the removal of his case to the United States Court at Austin, and for grounds of removal defendant showed, by affi-davit, "That he is an American citizen of African race, and is a colored man, and one of the class embraced in the 1st Section of the act of the Congress of the United States, of date April 9, 1866, known as the Civil Rights Bill. That the said defendant, on account of his color, race and politics, cannot have the full and equal protec-tion and benefit of the laws of said State of Texas, upon a trial in courts of said State. That he believes the pub-lic prejudice is too strong against him, on, among others, the ground above set forth. That it will be impossible for him to have justice done on a trial in said State court. Wherefore, he presents this his petition for removal of said case, as above set forth, and as in duty bound peti-tioner will ever pray, etc."

On December 16, 1872, defendant renewed his motion, making the following affidavit:

"THE STATE OF TEXAS ⎫ District Court Fayette County.
          v.          ⎬ Indictment for bigamy.
MATHEW GAINES.     ⎭

" *To the Hon. I. B. McFarland, Judge of the Twenty-ninth Judicial District, presiding:*

"The defendant in the above entitled case most respect-fully makes application for the removal of said case to the District Court of the United States for the Western District of Texas, sitting at the city of Austin, Texas, in which said Western District the said county of Fayette is embraced, on the grounds following: First, That defendant is an American citizen of African descent, a native of the State of Louisiana, and for several years past a resident citizen of Texas; that he is a colored man, formerly·a slave in the State of Louisiana, and one of the class embraced in the 1st Section of the act of the Congress of the United States, of date April 9, 1866, known as the "Civil Rights Bill;" that on account of his race, color and previous condition, and also on account of his politics, being an active member of the Republican party, and one of the representative men of those of his race, color and former condition, he cannot on a trial of said cause in this or any of the courts of said State have the full and equal protection and benefit of the laws of said State of Texas and proceedings thereunder for the security of person as enjoyed by white citizens, and that he believes the public prejudices against him for the causes above set forth are such that it will be impossible for him, defendant, to obtain a fair and impartial trial in said case in this or any other of the courts of this State. Second, That defendant is a member of the State Senate, is Senator from Washington county, and was elected and holds his seat therein as a Republican; that in consequence of his said position and politics the Democratic party of this, Fayette county, and of the State generally, have be-

come very much prejudiced—malignantly so—against defendant, and would on a trial condemn defendant upon any ground, however insufficient; that the danger to defendant from this cause upon a trial in a State is imminent from the circumstances of the juries being composed of a large majority of Democrats; the officials who have the selection of talesmen being Democrats, the legal rights of defendant to an impartial jury to try his case would be greatly impaired if not wholly defeated, and defendant, in case of the exhaustion of his peremptory challenges, be left defenseless and helpless against the malignant prejudices of his political enemies, and thus his trial become a mockery of justice; that, as an evidence of such prejudice, several of the white jurors who were to have sat on his case when formerly called for trial were heard, after leaving the jury box—the case being continued—to say, 'Its a damn good thing his (meaning defendant's) case was put off, for had it been tried he would have gone to the penitentiary sure as hell.'

"Wherefore, the premises considered, the defendant moves the court to order the removal of said case upon his complying with the requisites of the law in such case made and provided, and with all which said requisites he is now here ready to comply.

           "MATHEW GAINES."

At May term, 1873, the motion was acted upon and overruled, the trial had, and final judgment rendered. The appeal presents the right to remove the case to the United States Court.

*J. R. Burns*, for appellant, filed an elaborate and exhaustive brief. Its length prevents insertion. Its subject matter cannot be given in a synopsis.

*Browne*, for the State, insisted that the applicant should show, that in this prosecution, by reason of some exist-

ing "law, statute, ordinance, regulation or custom" of the State of Texas, he is, or is in danger of being placed, in a condition different from that in which a white citizen would be placed.

2. Examining the acts of Congress, it was insisted that the application was not in the terms of the statutes.

3. The United States Court has no jurisdiction to try offenses under the State laws.

No court of the United States has or can have, nor has Congress the constitutional power to confer on them or any of them, jurisdiction to try indictments found in the State courts, or breaches of the penal laws of the States. Their jurisdiction is described and limited by the Constitution of the United States, Article 3, Section 2, p. 194, Paschal's Annotated Constitution; and neither the Supreme Court of the United States nor the inferior courts contemplated by the first section of the same article can go beyond the plain limitations of the second section. (5 Parker's Cr. Rep., 577.) The result must therefore inevitably be, that, however guilty, the appellant must go unpunished if the application were granted.

4. That Congress can have no constitutional power to prescribe a rule of evidence or procedure to the State court seems a self-evident proposition, and numerous decisions to that effect might be cited. Let one or two suffice on a point so plain: Craig v. Dimock, 47 Ill., 307; Carpenter v. Snelling, 97 Mass., 458.

OGDEN, P. J.—The appellant was tried and convicted on a criminal prosecution in the lower court, and has appealed the case to this court for the correction of certain alleged errors.

On the trial he moved a transfer of his case to the Federal court for certain specified reasons, among which are, that the defendant is an American citizen of African de-

scent, and that there exists in the county where he is indicted, and in the State, such a prejudice against his race, and especially and particularly against himself, for causes there stated, that he cannot have justice done him in the State courts, and claimed that for said causes he was entitled, under the act of Congress of April 9, 1866, commonly called the Civil Rights Bill, to be heard and have his case determined in that court. His motion for that purpose was by the District Court refused, and the action of the court in that respect he complains of as a material error, seriously affecting his rights under the law.

The first question, therefore, for the decision of this court is, had the appellant the right, under the act of Congress, and upon the facts set out in his several motions, to remove his case for final trial to the Federal court? If so, then this court has no jurisdiction over the other errors assigned, and has only to reverse the judgment of the District Court, and order a suspension of all further proceedings by that court until the action of the Federal court upon the case has been duly certified to it for observance. But if the appellant had no right to remove his case to the Federal court, and the District Court did not err in refusing the application, and rightly held jurisdiction of the case for final trial and determination, then it may become the province and duty of this court to pass upon the other assignments of error.

In deciding the motion to remove, the district judge delivered a lengthy written opinion, in which he strongly intimates that the act of Congress called the Civil Rights Bill is at least in one respect unconstitutional, and refers to several adjudicated cases in the State courts in support of that position. We have not been able to examine all the cases referred to, from the fact that they are at present inaccessible, but such as we have examined we consider either inapplicable to the case at bar, or from

the peculiar language of the court making the decision not entitled to any weighty consideration.  The constitutionality of the Civil Rights Bill has been repeatedly recognized by the Supreme Court of the United States, the only tribunal which has the ultimate and final determination of the constitutionality of all acts of Congress, and we think State courts should be exceedingly cautious in attempting to settle questions of grave importance which belong peculiarly to a different and higher tribunal.  This court has recognized the Civil Rights Bill as constitutional, and we feel bound to so regard it until higher authority and better reason than we have seen convince us to the contrary.

The Civil Rights Bill declares all persons, with certain exceptions, born in the United States to be citizens thereof, regardless of their previous condition, race or color, entitled to the same rights, and subject to like punishments, pains and penalties, and to none other.  The 3d Section provides that "the District Courts of the United States within their respective districts shall have, exclusively of the courts of the several States, cognizance of all crimes and offenses committed against the provisions of this act, and also concurrently with the Circuit Courts of the United States, of all causes, civil and criminal, affecting persons who are *denied* or *cannot enforce* in the courts or judicial tribunals of the State, or locality where they may be, any of the rights secured to them by the first section of this act; and if any suit or prosecution, civil or criminal, has been or shall be commenced in any State court against any such person for any cause whatsoever, * * * such defendant shall have the right to remove such cause for trial to the proper District or Circuit Court, in the manner prescribed," etc.  It cannot be controverted that the object and purpose of this act was primarily to protect the recently emancipated slaves of

the country against class and unfriendly legislation by the States and the prejudices which had grown up with the institution of slavery against the colored man enjoying any of the rights of a citizen.

It attempted to secure by this right of removal of all such causes to the courts of the nation, where the equal rights of all parties were supposed to be fully recognized, to the colored man those rights which might be denied him by class legislation, or where he could not enforce those rights under equal and impartial laws because of the prejudice existing among his former masters against the freedom of his race; and therefore the statute uses the very comprehensive language in applying the remedy to all persons *who are denied* or *cannot enforce* in the courts or judicial tribunals of the State any of the rights secured to them by this act. Any other construction would render the latter portion of the clause absolutely nugatory, and indeed would render the whole act almost entirely useless for any good purpose whatever. There is now perhaps not a State whose laws make any distinction between the rights of the colored and white citizen, while there may be many localities where the colored man cannot expect to receive his equal rights under the laws. In a well considered opinion of the Supreme Court of North Carolina (65 N. C. Rep., The State v. Dunlap), where this identical question was the only one presented, Chief Justice Pearson very truthfully and forcibly says: "Had the object been merely to prevent discrimination by *laws* of the *State*, very few words would have answered the purpose, and there would have been no occasion for an affidavit in regard to the matter which must appear on the face of the public law; but the act under consideration goes into detail, and, among other things, guarantees to every citizen of color as full and equal benefit of all laws and proceedings for the security of person and

property as is enjoyed by white citizens." The statute secures to the colored citizen the benefit of all *laws* and proceedings, thereby clearly indicating that it was possible that the colored man might, through prejudice, be deprived in the State courts of the execution of equal and impartial justice, and therefore the provision for the removal to the Federal courts. In the language of Justice Pearson in the case referred to, we consider, after mature reflection, that it is conclusive that the act of Congress was intended to reach and conclude every case "where, by reason of prejudice in a community or otherwise, a fair and impartial trial cannot be had in the State courts." We must therefore decide that the District Court erred in refusing the removal of this case to the United States court, and for that reason the judgment must be reversed. Whether this construction will place in the colored citizen rights not enjoyed by white citizens, or whether the Federal courts can execute the laws of this or any other State, are questions we do not feel called upon now to consider. When the case goes before that court it will then be time enough for it to consider what to do—whether to try the case or remand it to the State court. In either and any event, if we follow the law the responsibility will rest upon the law-making power, and not upon those who administer it.

The requisite formalities for removing a case from a State to the Federal court are prescribed in the act of Congress of March 12, 1863, and amendments thereto, and we think were sufficiently closely followed in this case to entitle the party to the benefits of the law, excepting his failure to tender in the State court "good and sufficient security for his filing in such (United States) court, on the first day of its session, copies of such process and other proceedings against him, and also for his appearing in such court and entering special bail in the case."

This would certainly have been the better practice, and under the act of March 12, 1863, was a prerequisite to the right of removal. But under the amendatory act of May 11, 1866, it is enacted: "Nor shall it be necessary, in the State court, to offer or give security for the filing of copies in the Circuit Court of the United States, but on filing the petition as provided for in said fifth section the further proceedings in the State court shall cease, and not be resumed until a certificate under the seal of said Circuit Court of the United States, stating that the petitioner has failed to file copies in said Circuit Court at the next term, is produced." This last act refers as well to removals to the district as the circuit courts of the United States, and prescribes clearly the duties of the State courts.

The judgment of the District Court is reversed, and the cause remanded, to be proceeded with in accordance with this opinion.

REVERSED AND REMANDED.